**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 13-2-DLB-CJS**

**CHARLIE COLEMAN**                                                                                         **PLAINTIFF**

vs.                    **MEMORANDUM ORDER AND OPINION**

**SANITATION DISTRICT NO. 1
OF NORTHERN KENTUCKY, et al.**                                                     **DEFENDANTS**

\*\*\*     \*\*\*     \*\*\*     \*\*\*

## I. INTRODUCTION

Plaintiff Charlie Coleman brings this purported class action against Sanitation District No. 1 of Northern Kentucky, Boone County Judge Executive Gary Moore and Campbell County Judge Executive Steve Pendery. Plaintiff seeks a declaratory judgment that Defendants raised sanitation service rates in 2012 in a manner that violated K.R.S. § 220.542. Plaintiff also claims that the allegedly improper rate increase amounted to common law conversion, and deprived him of his right to due process of law guaranteed by the Fourteenth Amendment.

Shortly after this case was removed from Campbell County Circuit Court, the parties proposed that they file cross-motions for summary judgment on Plaintiff's claim that Defendants improperly raised 2012 service rates in violation of K.R.S. § 220.542. Additionally, the parties proposed that all other claims–including the federal claim–be stayed pending the Court's resolution of the dispositive motions. The Court initially found

1

that this proposal made practical sense; if the Court found in favor of Defendants on this claim as a matter of law, Plaintiff's remaining claims necessarily failed. Thus, there was the potential that the Court might resolve this case on the state-law claim at the outset, saving the parties significant litigation costs. The Court, therefore, permitted the parties to file cross-motions on the state-law claim and stayed the remaining claims. Those cross-motions for summary judgment are now before the Court (Docs. # 10, 11), have been fully briefed (Docs. # 13, 14, 17, 18), and are ripe for review.

During the Court's initial review of the cross-motions for summary judgment, the Court had concerns that the parties' proposed resolution might run afoul of a more significant concern: the Court may be issuing an opinion on a state-law matter when it lacks subject matter jurisdiction. The case was removed to Federal court on the premise that Plaintiff's § 1983 claim gave the Court federal question jurisdiction pursuant to 28 U.S.C. § 1331. On its face, Plaintiff's Complaint clearly states a federal claim. However, in considering the claim, the Court had concerns that Plaintiff's federal claim was wholly insubstantial and frivolous or completely devoid of merit such that the Court was deprived of federal question jurisdiction. The Court then ordered the parties to file supplemental briefing on the merits of Plaintiff's § 1983 claim in order to make an initial determination about whether the Court has subject matter jurisdiction. The parties have now submitted supplemental briefing in compliance with the Court's directive. (Docs. # 21, 22). Having reviewed the parties' supplemental briefing, the Court finds that Plaintiff's § 1983 is entirely devoid of merit; therefore, the Court cannot exercise federal question jurisdiction over this case.

## II. FACTUAL BACKGROUND

### A. Rate Increase

Defendant Sanitation District No. 1 ("SD1") provides sanitation removal services to property owners in Boone, Kenton, and Campbell Counties, all in Northern Kentucky. It presently owns and maintains more than 1,600 miles of sanitary sewer lines, 143 wastewater pumping stations, 15 flood pump stations, eight package treatments plants, and two major wastewater treatment plants. (Doc. # 10-6). Plaintiff Charlie Coleman, a Campbell County resident and property owner, receives services from SD1. Consequently, he has paid service fees to SD1, including the allegedly unlawful rate increase in 2012 that is at the heart of this litigation.

For reasons insignificant to this lawsuit, SD1 determined that it would suffer a revenue shortfall in Fiscal Years 2012 and 2013. Specifically, SD1 forecasted that it would spend $158 million in Fiscal Year 2012, and $127 million in Fiscal Year 2013, while only bringing in $75 million in revenue each year. Thus, anticipated revenues amounted to approximately fifty percent of anticipated expenditures.

SD1's Board of Directors began considering rate increases to remedy the shortfall. On January 18, 2011, the Board passed a resolution proposing three options for rate increases. (Doc. # 10-8). Option 1 proposed a fifteen percent increase in sewer rates over each of Fiscal Years 2012 and 2013; Option 2 proposed a twelve-and-a-half percent increase; and Option 3 proposed a nine-and-a-half percent increase. (*See* Doc. # 10-10 at 30).

The following day, County Judges Executive Gary Moore, Steve Pendery and Steve Arlinghaus, of Boone, Campbell and Kenton Counties, respectively, convened a special

3

meeting concerning SD1. The Judges Executive were briefed on the infrastructure challenges faced by SD1, the need for the rate adjustments, and three rate adjustment options proposed by the Board. Finally, the Judges Executive were advised when public hearings would be scheduled, and on the length of the public comment period.

That same day, the proposed rate increases were published in The Kentucky Enquirer newspaper. (Doc. # 10-8). The publication gave Northern Kentucky residents notice of three public hearings to take place in Boone, Campbell and Kenton Counties on January 26, 2011, January 27, 2011 and January 29, 2011, respectively. Finally, the publication gave notice that the SD1 Board of Directors would meet on March 22, 2011 for final consideration and approval of the rate increases.

Consistent with the notice, three public hearings were held in Boone, Campbell and Kenton Counties. Then, on March 22, 2011, the Board of Directors met to finally consider the proposed rate increases. (Doc. # 11-42). After considering the three options and public comments, Board Member Chuck Heilman moved to accept and approve Option 1 – the fifteen percent rate increase with one limited and irrelevant exception. Seven Board Members voted in favor of the increase and only one Member abstained. The fifteen percent rate increase for Fiscal Years 2012 and 2013 was thus accepted and approved.

On March 29, 2011, the Judges Executive reconvened to finally consider and approve one of the three rate increases. (Doc. # 10-13). Before considering the rates, though, the Judges Executives were provided information regarding House Bill 26, which is at the heart of this litigation and will be discussed more fully below. They were then advised of the public hearings and comments, and the rate increase that was ultimately approved and recommended by the SD1 Board. Thereafter, Boone County Judge

4

Executive Gary Moore and Campbell County Judge Executive Steve Pendery voted in favor of a fifteen percent rate increase for Fiscal Year 2012, followed by a fifteen percent rate increase for Fiscal Year 2013; Kenton County Judge Executive Steve Arlinghaus voted against the increases. The rate increases were thus adopted and approved. The Fiscal Year 2012 rate increase became effective April 1, 2011, and the Fiscal Year 2013 increase became effective April 1, 2012.

### B. Statutory Procedure to Amend Rates and House Bill 26

The parties agree that until June 8, 2011, K.R.S. § 220.035 governed the procedure by which sanitation rates could be amended. That statute provided:

(1) A fiscal court may:

    (a) Review and approve, amend, or disapprove proposed district land acquisitions;

    (b) Review and approve, amend, or disapprove proposed district construction of capital improvements;

    (c) *Review and approve, amend, or disapprove proposed service charges or user fees*; and

    (d) Review and approve, amend, or disapprove the district's proposed budget.

. . .

(4) In the case of districts governed by the provisions of K.R.S. § 220.135, the county judges/executive shall exercise the powers listed in subsection (1) of this section. They shall meet jointly at least once each fiscal year to exercise these powers. Their votes shall be equally weighed. In the case of review and approval of proposed service charges or user fees, a majority of the votes of the county judges/executive shall be required to override the recommendation of the district board of directors.

1998 Ky. Acts 234 at §4 (emphasis added). Because SD1 was governed by K.R.S. § 220.135, the county judges/executive had the authority to review any proposed rate change

5

made by SD1's Board. The county judges/executive were only permitted to override a recommended rate change by a majority vote.[1]

On January 4, 2011, House Bill 26 was introduced on the floor of the Kentucky House of Representatives. In its original form, the Bill had no impact on the procedure to amend sanitation rates. However, on March 2, 2011, a Senate Committee Substitute to the Bill proposed a modification to the procedure such that any rate increase must be approved by a majority of the fiscal courts before it could be adopted by the district's board of directors. *See* HB 26, Senate Committee Substitute 1 at § 13, 2011 Gen. Assembly, Reg. Sess (Ky. 2011). In its final form, adopted March 7, 2011, the Bill required that proposed rate increases greater than five percent in districts with more than 10,000 customers must be approved by a majority of the fiscal courts before they may be adopted by the district's board of directors.[2] *See* HB 26, 2011 Gen. Assembly, Reg. Sess (Ky. 2011). (codified at K.R.S. § 220.542).

---

[1] One thing is not clear from the statute: does the statute permit the county judges/executive to approve a multi-year rate increase at one time? Plaintiff contends that the statute requires the county judges/executive to meet annually to review and approve rates. Thus, Plaintiff argues a multi-year rate increase violates K.R.S. § 220.135. Defendant responds that nothing in the statute prohibits the county judges/executive from voting on a multi-year rate increase. Further, Defendants argue that although they are required to meet annually, they have the discretion to determine which of the powers set forth in K.R.S. § 220.035(1) that they will exercise. For example, Defendants argue that they were not required to review and approve, amend, or disapprove proposed service charges or user fees at each of their annual meetings. The parties' disagreement on this point has no relevance to the Court's ultimate holding and will, therefore, not be addressed. The Court points out the disagreement to provide context for this lawsuit.

[2] Plaintiff asserts that rate increases are also subject to the requirements of K.R.S. § 220.035. If Plaintiff's assertion is true, a rate increase greater than five percent must first be approved by the fiscal courts, then the district's board of directors, and finally the county judges/executive. This issue need not be decided by the Court.

Although the final version of House Bill 26 was adopted on March 7, 2011, it did not become effective until June 8, 2011. As such, the Bill did not become effective until over two months after the Fiscal Years 2012 and 2013 rate increases were approved by the County Judges Executive, and over two months after Fiscal Year 2012 became effective. Plaintiff concedes that the rate increase for Fiscal Year 2012 was lawful. However, Plaintiff contends that the rate increase for Fiscal Year 2013 violated K.R.S. § 220.542 because it was not approved by the fiscal courts before it was implemented, and it violated K.R.S. § 220.035(1) and (4) because the county Judges Executive did not vote to approve the rate increase during their annual meeting in 2012.[3]

Plaintiff filed a Class Action Complaint in Campbell Circuit Court on November 21, 2012, challenging the allegedly unlawful rate increase. Count 1 seeks a declaratory judgment that the rate increases violated K.R.S. § 220.542. Count 2 alleges that Defendants are liable for common law conversion for "converting Plaintiffs and all other users' monies under the guise of lawful rate increase." (Doc. # 1-1 at ¶ 40). Finally, Count 3 asserts a civil rights cause of action under 42 U.S.C. § 1983 because Defendants allegedly violated Plaintiff's right to due process of law by "intentionally voting to increase rates for SD1 users . . . despite requirements of K.R.S. § 220.542(1) and (3) . . . ." The Court will now consider Plaintiff's federal claim.

### III. STANDARD OF REVIEW

The Court is reviewing Plaintiff's § 1983 claim to determine whether it gives the Court

---

[3] Plaintiff's Complaint does not raise this latter allegation. (*See* Doc. # 1-1 at ¶¶ 32-36) (seeking a declaratory judgment that Defendants violated K.R.S. § 220.542). Rather, Plaintiff raises it for the first time in his Motion for Summary Judgment. (Doc. # 11 at 1).

7

federal question jurisdiction over this case. As a general rule, the Court follows the "well-pleaded complaint rule," "which provides that federal question exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). That is, the Court must determine whether Plaintiff's claim is one "arising under" federal law. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 7 (2003). "'A suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.'" *Id.* (quoting *Louisville & Nashville R. Co. V. Mottley*, 211 U.S. 149, 152 (1908)). A civil rights action under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment is certainly one that is based upon the laws of the United States. However, that does not end the Court's inquiry here.

A claim under a federal statute does not give the Court federal question jurisdiction if it is "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 537 (1974); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("[A] district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."). "To be obviously devoid of merit, an alleged constitutional claim might represent an attempt to obtain federal jurisdiction by the mere assertion of a frivolous connection between the constitution and the subject matter of the dispute, or the alleged claim might simply be immaterial to the real controversy." *Garvin v.*

*Rosenau*, 455 F.2d 233, 239-40 (6th Cir. 1972) (citing *Bell v. Hood*, 327 U.S. 678 (1946)).[4]

## IV. ANALYSIS

Plaintiff's Complaint generally alleges that Defendants deprived him of his right to due process as secured by the Fifth and Fourteenth Amendments of the Constitution. Section 1983 actions based on deprivations of due process fall into two categories: "violations of procedural due process and violations of substantive due process." *Braley v. City of Pontiac*, 906 F.2d 220, 224 (6th Cir. 1990). Plaintiff's Complaint fails to specifically allege whether his due process claim is based on procedural or substantive due process. In supplemental briefing, though, Plaintiff argues that Defendants deprived him of both procedural and substantive due process. Each alleged violation will be addressed in turn.

### A. Procedural Due Process Claim

"To maintain an action under 42 U.S.C. § 1983 based on violations of procedural due process, Plaintiff[] must show that: (1) [his] property interest at stake is a protected property right under the Fourteenth Amendment, (2) the deprivation of the interest contravened notions of due process, and (3) state or administrative processes and remedies to redress the alleged violations are inadequate." *Clair v. Northern Ky. Indep. Health Dist.*, 504 F.

---

[4] Although this case is being dismissed pursuant to Rule 12(b)(1) because Plaintiff's federal claim is entirely devoid of merit, and thus fails to give this court with subject matter jurisdiction, the Court would also issue judgment in favor of Defendants pursuant to Rule 56(f) on the federal claim. Under the summary judgment rule, the Court may enter judgment in favor of a nonmoving party after giving notice and a reasonable time to respond if "there is no genuine dispute as to any material fact and the [party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (f). Here, the Court has given the parties notice that it may enter judgment pursuant to Rule 56(f) (Doc. # 20 at 4), and each party has responded (Docs. # 21, 22). While discovery has not been completed on all issues, the parties have completed all discovery necessary to resolve whether Defendants violated Plaintiff's rights under the Fourteenth Amendment by failing to follow the procedures set forth in K.R.S. § 220.542. In fact, this issue is purely legal, and one that hardly requires an analysis of particular facts.

Supp. 2d 206, 211-12 (E.D. Ky. 2006). Here, Plaintiff's procedural due process claims fails the first two elements.

### 1. Plaintiff does not have a property interest at stake that is protected by the Fourteenth Amendment

The Supreme Court has defined the boundaries of constitutionally protected property as follows:

> To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). State law generally determines whether an individual has an entitlement to certain property. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009). However, "'whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law.'" *Id.* (quoting *Whaley v. County of Tuscola*, 58 F.3d 1111, 1114 (6th Cir. 1995)). Here, Plaintiff alleges that he has two property interests at stake that are created by state law: (1) a property interest in "the legal rate" and (2) a property interest in the continuation of water. The Court disagrees.

### A. Plaintiff does not have a property interest in a "legal rate"

Plaintiff's allegation that he has a property interest in "the legal rate" is presumably an allegation that he has a property interest in the sanitation rates as they were before the rate increase. Plaintiff contends that a combination of various Kentucky statutes—namely, K.R.S. §§ 220.510, 135, 035, and 542—create this property right. He is unable to point to any decision from a Kentucky or Federal court to support this argument. Instead, he attempts to bolster his argument by distinguishing the present case from two Federal cases

where courts held that the plaintiff did not have a property interest in specific, future utility rates. *See Crosby v. City of Jackson*, 813 F. Supp. 476 (S.D. Miss. 1993); *RR Vill. Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1202 (2d Cir. 1987).

The statutes cited by Plaintiff, considered in isolation or in toto, do not create a "legitimate claim of entitlement" to a specific utility rate. K.R.S. § 220.510 gives sanitation service board of directors the authority to "determine the rates and compensation or rentals to be charged for the use of the sanitary works." K.R.S. § 220.510(1). The board of directors' discretion is limited to some extent: "[t]he rates shall at all times be *reasonable*, taking into account the cost of the works, the cost of operation and maintenance, and the amount necessary for the amortization of the bonds issued to finance the works." *Id.* (emphasis added). However, the requirement that rates be "reasonable" is entirely ambiguous, and falls far short of guaranteeing Plaintiff a specific rate.

None of the other statutes cited by Plaintiff support his position that he is guaranteed a certain rate. Those statutes, particularly K.R.S. §§ 220.035 and 220.542, simply proscribe the procedure by which sanitation service rates may be reviewed, approved, and amended. They also delineate which governing body must approve certain rate increases, which is largely based on the population of the water district and size of the proposed rate increase. But they do nothing to guarantee a specific rate.

The Kentucky Supreme Court's decision in *Kentucky Industries Utility Customers, Inc. v. Kentucky Utilities Co.*, 983 S.W.2d 493 (1998), cited by Defendants, supports the Court's conclusion. There, ratepayers challenged a Kentucky statute that permitted utility providers to seek approval for rate increases in the form of surcharges through an abbreviated proceeding with the Public Service Commission. This statute enabled utility providers to

escape the normal, and lengthy, process of seeking approval from the Public Service Commission to raise "general rates." *Id.* The Kentucky Supreme Court upheld the validity of the statute against a procedural due process challenge, holding that "[u]tility ratepayers have no vested property interest in the rates they must pay for a utility service despite the fact that it is provided by a regulated monopoly." *Id.* at 497. The same holding applies with equal force here.

*Crosby v. City of Jackson* also supports the Court's conclusion. There, like here, the plaintiff argued he had a vested property interest in a specific utility rate. *Crosby v. City of Jackson*, 813 F. Supp. 476, 478 (S.D. Miss. 1993). Also like the present case, the plaintiff argued that the defendants had failed to follow a state statutory procedure in raising utility rates. *Id.* And like the Court has considered here in its due process analysis, the Mississippi court considered whether a combination of Mississippi statutes evinced the Mississippi legislature's intent to create a property interest in certain rates. *Id.* Those statutes precluded a public utility from charging a rate different than that prescribed in its rate schedules, and prohibited the public utility from changing its rates unless it followed the procedure set by statute. *Id.* (citing Miss. Code Ann. §§ 77-3-35, 77-3-37(1)). The court held that "these statutes do not create in a consumer a 'legitimate claim of entitlement to a particular rate; rather, *they regulate the conduct of public utilities." Id.* (emphasis added). The same can be said for the Kentucky statutes: they do not create in a consumer a legal claim of entitlement to a particular rate; instead, they regulate the procedure by which rates may be reviewed and amended.

Other courts have consistently reached the same conclusion that "utility customers have no vested rights in any fixed utility rate." *Sellers v. Iowa Power & Light Co.*, 372 F.

Supp. 1169, 1172 (S.D. Iowa 1974) (collecting cases); *see also Davis v. Water-Sewer & Sanitation Comm'n or Comm'rs of Bowling Green,* 223 F. Supp. 902, 904 (W.D. Ky. 1963). While these cases did not analyze the particular statutes at issue in this case, they do stand for the proposition that utility customers do not generally have a property interest in a specific utility rate. To the extent they reach that conclusion, the Court relies on them to support its conclusion that Plaintiff does not have a protected property interest in a specific sanitation service rate.

### B. A right to continued water service is not at issue in this case

Plaintiff also alleges that he has a constitutionally protected right to continued water services. He recognizes that this is a matter of first impression in Kentucky, but cites a number of cases holding that the laws of other states create such a property interest. *See Mansfield Apartment Owners Ass'n v. Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993); *Midkiff v. Adams county Reg'l Water Dist.*, 409 F.3d 758 (6th Cir. 2006); *Palmer v. Columbia Gas of Ohio, Inc.*, 479 F.2d 153, 165 (6th Cir. 1973); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978). However, the Court need not resolve this matter of first impression because Plaintiff does not have standing to challenge this alleged deprivation.

"To demonstrate constitutional standing, a plaintiff must satisfy the following three elements: (1) an allegation of an 'injury in fact,' which is concrete harm suffered by the plaintiff that is actual or imminent, rather than conjectural or hypothetical; (2) a demonstration of "causation," which is fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) a demonstration of 'redressability,' which is a likelihood that the requested relief will redress the alleged injury."

*Friends of Tims Ford v. Tennessee Valley Auth.*, 585 F.3d 955, 966-67 (6th Cir. 2009).

Plaintiff has failed to show either an actual or imminent threat of injury. Specifically, Plaintiff has failed to allege that his water or sanitation services were ever cut off. In fact, it appears that Plaintiff paid the allegedly unlawful rates (*See* Doc. # 1-1 at ¶ 2), and has therefore never been at risk of a service shut-off. At best, the Complaint alleges that "[i]n the event of non-payment, Plaintiffs were threatened with their water being shut off and other punitive penalties and interest." (Doc. # 1-1 at ¶ 38). However, the complaint never alleges that a water shut-off was imminent. Without some allegation that his right to continued water service has been affected, Plaintiff simply cannot challenge SD1's process of discontinuing water and sanitation services.

### 2. Defendants were not required by the Due Process Clause of the Fourteenth Amendment to follow K.R.S. § 220.542

Even if the Court assumed that Plaintiff had a constitutionally protected property interest at stake, Plaintiff has failed to allege that he was deprived of his property in a way that contravenes notions of due process. The Due Process Clause of the Fourteenth Amendment requires that "the State . . . provide an individual with notice and an opportunity to be heard before the State may deprive him of his property." *Jones v. Flowers*, 547 U.S. 220, 240 (2006) (Thomas, J., dissenting). Notice is constitutionally sufficient so long as it is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.'" *Id.* at 226 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). Likewise, an opportunity to be heard is constitutionally sufficient so long as it is provided "'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552

(1965)). Plaintiff's Complaint is entirely devoid of any allegations that he was deprived of either notice or an opportunity to be heard.

Instead, Plaintiff apparently wishes to build an additional protection into the Due Process Clause. He alleges that:

> Defendant Moore and Pendery deprived [him] due process of law, specifically, KRS § 220.542, by intentionally voting to increase rates for SD1 users, a staggering 15% per year, despite requirements of KRS § 220.542(1) and (3), which calls for the approval of a majority of the fiscal courts of the counties having jurisdiction over SD1, that each approval of a fiscal court shall be equally weighed, and be taken in a public hearing.

(Doc. # 1-1 at ¶ 48). In other words, Plaintiff believes he was denied due process because Defendants failed to follow a Kentucky statute that proscribes the procedure to raise sanitation rates.

Plaintiff stretches the protections of the due process clause too far. The Due Process clause provides citizens with a threshold level of protection, but the states are free to provide additional levels of protection. The amount of process due pursuant to the Fourteenth Amendment "is not answered by state law or local ordinances but by constitutional benchmarks." *Chandler v. Villages of Chagrin Falls*, 296 F. App'x 463, 471 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541-42 (1985)). "'Failure to comply with state law does not . . . automatically translate into a deprivation of procedural due process under the United States Constitution.'" *Id.* at 472 (quoting *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999)). Rather, notice and a meaningful opportunity to be heard remains the standard. *Id.* Here, Plaintiff does not argue that Defendants somehow infringed on his right to notice and an opportunity to be heard. Instead, he complains about Defendants' failure to follow *additional* protections provided by the

Commonwealth—namely, that sanitation rate increases must be approved by the fiscal courts in limited circumstances. Even assuming that the statutory protections were not followed, that violation does not support a viable due process claim because it has nothing to do with Plaintiff's right to notice and an opportunity to be heard.[5] Accordingly, Plaintiff's procedural due process claim is entirely devoid of merit such that it does not give this Court federal question jurisdiction.

### B. Substantive Due Process

The Sixth Circuit recognizes two categories of § 1983 claims for violations of substantive due process: (1) where the plaintiff is denied "a right, privilege, or immunity secured by the Constitution or by federal statute other than procedural claims under 'the Fourteenth Amendment simpliciter'" and (2) where the defendant engages in conduct that "shocks the conscience" of the court. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993)).

Plaintiff fits his substantive due process claim into the latter category—that Defendants' conduct shocks the conscience of the Court. Plaintiff argues that Defendants "intentional[ly] refused" to follow K.R.S. § 220.542 "after paying for lobbying work on [House Bill] 26 (which created K.R.S. § 220.542) and discussing H.B. 26 in at least eight board meetings." (Doc. # 21 at 9). Moreover, Plaintiff asserts that Defendants "approved the unlawful rate increase (that violated K.R.S. § 220.542) immediately after SD1's attorney provided information on the requirements of the law to them." *Id.* Plaintiff contends that this

---

[5] Because Plaintiff has not specifically challenged the notice and opportunity to be heard in this case, the Court need not consider whether either was provided in a constitutionally sufficient manner.

conduct shocks the conscience.

Even if Defendants violated K.R.S. § 220.542 by approving rate increases for Fiscal 2013 before K.R.S. § 220.542 became effective, which the Court doubts, that conduct does not shock the conscience of the Court. "Mere violations of state law, even violations resulting from bad faith, do not invariably amount to conscience-shocking behavior." *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006). Rather, the official's actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Here, Defendants voted to amend sanitation rates in accordance with statutory procedures in effect at the time their votes were cast. They certainly knew that the statutory procedures would be amended in the near future, and rushed to approve the amended rates before the statutory amendments became effective. However, the timing of Defendants' votes leads to only one conclusion: they attempted to comply with the statutory procedures in effect at the time they voted and thereby avoid the approval procedures created by the new statutes. Even if this conduct violated K.R.S. § 220.542, it is not "so shocking as to shake the foundations of this country." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012).

The Sixth Circuit's decision in *EJS Properties, LLC v. City of Toledo* supports this holding. There, the plaintiff-company wanted to build a charter school on a piece of commercial property. *Id.* at 851. To do so, the plaintiff first needed to have the property re-zoned. *Id.* The plaintiff sought the support of the region's city council representative, who initially appeared in favor of re-zoning the property. *Id.* However, the representative eventually changed his mind and voted against re-zoning. *Id.* The plaintiff alleged that the representative changed his mind only after plaintiff "refused to acquiesce to [the

representative's] demand that EJS donate $100,000 to a local retirement fund." *Id.*

The Sixth Circuit held that the representative's conduct did not amount to a substantive due process violation because it did not "shock the conscience." *Id.* at 862. "Perhaps it is unfortunate," the court noted, "that the solicitation of a bribe by a public official does not shock our collective conscience the way that pumping a detainee's stomach does." *Id.* "But, although we can condemn [the representative's] for his misconduct, we simply cannot say that his behavior is so shocking as to shake the foundations of this country." *Id.* The conduct at issue here pales in comparison; soliciting a bribe is far more egregious than rushing to approve a rate increase under one procedure knowing that procedure will soon change. As such, the Court cannot find that Defendants' conduct "shocks the conscience." It is not even a close question. In fact, the answer is so clear that the Court finds Plaintiff's substantive due process claim is entirely devoid of merit.

## V. CONCLUSION

At its core, this litigation is about two divergent interpretations of a recently-adopted Kentucky statute. Plaintiff has attempted to convert an alleged violation of that statute into a federal cause of action. For the reasons previously explained, the federal cause of action is entirely devoid of merit. As such, the federal cause of action does not give this Court federal question jurisdiction over this matter.

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff's federal claim brought pursuant to 42 U.S.C. § 1983 is hereby **dismissed with prejudice** and this matter is hereby **remanded** to Campbell Circuit Court;

(2) The parties cross-motions for summary judgment (Docs. # 10, 11) are hereby **denied as moot**; and

(3) Plaintiff's Motion for Oral Argument (Doc. # 19) is hereby **denied as moot**.

This 24th day of February, 2014.



G:\DATA\Opinions\Covington\2013\13-2 MOO dismissing federal claim.wpd